RICHARD H. NELSON and LINDA H. NELSON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Nelson v. Commissioner
Docket No. 11029-76.
United States Tax Court
T.C. Memo 1978-287; 1978 Tax Ct. Memo LEXIS 231; 37 T.C.M. (CCH) 1204; T.C.M. (RIA) 78287; July 26, 1978, Filed *231 Held, the petitioners purchased and held their condominium in Punta Gorda, Florida, as an activity engaged in for profit. Elmer E. Lyon and Alan J. Dansker, for the petitioners. Richard E. Trogolo, for the respondent. WILES
MEMORANDUM FINDINGS OF FACT AND OPINION WILES, Judge: Respondent determined a $ 3,105.00 deficiency in petitioners' 1974 Federal income taxes. The only issue we must decide is whether petitioners purchased and held their condominium as an activity engaged in for profit. If so, they are entitled to deduct the entire amount of expenses and depreciation incurred. FINDINGS *232 OF FACT Petitioners were residents of Indianapolis, Indiana, when they filed their petition herein. They timely filed their 1974 joint Federal income tax return with the Internal Revenue Service Center, Memphis, Tennessee. Richard H. Nelson (hereinafter petitioner) is a civil engineer who was for several years prior to 1973, a partner in the engineering firm, Henry B. Steeg & Associates (hereinafter Steeg). In October 1973, Steeg was acquired by Howard Needles Tammen Bergendoff, Architects, Engineers & Planners (hereinafter Howard Needles). As part of Howard Needles' acquisition of Steeg, petitioner sold 810 shares of Steeg stock to Howard Needles for $ 220,000, with payments to be made over a seven-year period. In addition petitioner also executed a three-year non-competition agreement under which he would receive $ 3,060.00 per month for 36 months. Petitioner reported that portion of the proceeds received in 1974 from the sale of his Steeg stock and the non-competition agreement on his 1974 income tax return. In 1968 petitioner became interested in investing in Florida real estate. One of his business associates described to petitioner how in 1967 he had purchased a condominium *233 in Naples, Florida, for $ 30,000, furnished it for $ 10,000 and had repeated requests to sell it for over $ 80,000. In June of 1969, petitioner on his honeymoon visited his business associate's condominium. Petitioner and his wife also visited a new development, north of Naples, called Punta Gorda Isles (hereinafter PGI). As a civil engineer petitioner was particularly impressed with how PGI was laid out, how construction was guaranteed, and how the development was operated. As a result, petitioner looked into investing in the property. After looking over the property he purchased a lot. Since 1969, petitioner has continued to purchase property at PGI. In 1971, he purchased an additional two parcels of real estate; in the early part of 1972 he purchased another two parcels at PGI; and in August 1972 he purchased an additional two lots; in December 1973, he purchased a condominium at PGI; and in 1975 he purchased another lot. In all, petitioner has purchased nine parcels of realty in PGI, covering approximately 6-1/2 acres, in six separate transactions, over a period of six years.
Immediately after purchasing the condominium in PGI petitioner and his wife spent approximately *234 one week in early 1974 furnishing the condominium so it could be rented. Once the condominium was furnished, he notified PGI's sales office that the unit was available for rent, supplied the sales office with a key, and filled out appropriate rental forms. He also hired Phelps Realty for one year as a rental agent. Finally, petitioner advertised his unit in the Wall Street Journal. In November 1974 petitioner placed an advertisement in the Indianapolis Star which ran for the remainder of the year. During 1974, petitioner was unable to rent his condominium. In December 1974, however, petitioner received a deposit for one month's rental from mid-January to mid-February. The condominium was also rented in February and March 1975, and then again during the last two months of 1975. In 1976 the condominium was rented for three months, and in April 1977 petitioner obtained a permanent tenant who has been renting the unit continuously. The PGI directors imposed certain minor limitations on rentals. For example, only one family may occupy a unit at a time, renters may not have animals, nor may renters park house trailers on lawns. Also, in order to avord a motel-type trade, renters *235 must stay for a minimum of one month. From 1973 to 1977 petitioner has averaged four weeks vacation a year. In 1973 petitioners spent one-half week in New Orleans, one week in Las Vegas, two weeks in upper Michigan and one-half week in PGI, where they looked over the possibility of purchasing a condominium. As earlier mentioned, petitioner subsequently purchased a condominium in PGI in December 1973, and during the month of January 1974 he spent a week in PGI with his wife who remained an extra week, furnishing the condominium. During the summer of 1974 petitioners vacationed in Michigan and in the winter of 1974 petitioners spent one-half week driving a car to PGI so they could have transportation for renters. In 1975 petitioners spent one week in Michigan and four weeks in Germany, Switzerland, and Austria. In the winter of 1975, petitioner and his family vacationed at Disney World in Florida for four days, and drove to PGI where they stayed for the weekend. In 1976 petitioner vacationed two weeks in California and Arizona and two weeks in Michigan. In 1977 petitioner spent two and one-half weeks in Michigan, and stayed home for the remainder of his vacation. The only other *236 use of the condominium by petitioner or his family occurred in 1976 when his brother-in-law stayed at the condominium for two or three days. The purpose of his brother-in-law's visit was to pick up the car previously left at the condominium and to do a few minor repairs. Petitioner has listed the condominium for sale for $ 73,900 which would give him approximately a $ 5,000 profit. Other condominiums in the same area of PGI have sold for as much as $ 80,000. On their 1974 Federal income tax return petitioners deducted $ 4,275 in depreciation on the condominium and its furnishings, and $ 7,186 in interest, advertising, maintenance, etc. In his notice of deficiency respondent disallowed all petitioners' deductions associated with the condominium except petitioners' interest expense deduction of $ 4,315 and real estate taxes of $ 929.Respondent explained that petitioners' other deductions were not allowed since petitioners did not engage in the rental of the condominium for profit. OPINION The only issue we must decide is whether petitioners purchased and held their condominium in Punta Gorda, Florida, as an activity engaged in for profit. If so, petitioners may deduct *237 the entire amount of their expenses and depreciation. If not, under section 183 [1] certain of their deductions will be allowed only to a limited extent. See Jasionowski v. Commissioner,66 T.C. 312, 320-321 (1976). Whether an activity is one engaged in for profit is a question of fact. Sabelis v. Commissioner,37 T.C. 1058, 1062 (1962). The test to be applied is subjective not objective; did the taxpayer have a "good-faith expectation of profit from a particular venture, irrespective of whether or not others might view that expectation as reasonable." Benz v. Commissioner,63 T.C. 375, 383 (1974). Petitioner contends he purchased the condominium as an activity engaged in for profit. In support of his position petitioner points to several persuasive facts: petitioner originally became interested in purchasing real property as an investment in 1969 when he stayed in a business associate's commercially successful condominium located in Florida. Since that trip to Florida petitioner has purchased 6-1/2 acres of PGI consisting of nine parcels acquired *238 in six separate transactions. In sum, petitioner has shown a pattern of investing in Florida realty. Beyond a consistent pattern of investment, however, petitioner has pointed to his efforts at renting the condominium. He notified PGI that he wanted to rent his unit, he hired a real estate agency to manage rentals for a year; and he placed advertisements in the Wall Street Journal and the Indianapolis Star. Although his efforts at renting were not successful in 1974, petitioner persevered. The unit was rented for approximately four months in 1975, three months in 1976, and either months in 1977. Although petitioner's efforts at renting initially proved unsuccessful, he has managed, over a period of four years, to convert the unit from a totally unrented apartment to a continuously rented apartment. Finally, petitioner has clearly shown to us that his condominium was not purchased for his personal use. During the four years he has owned the unit he has rarely visited the apartment other than to initially furnish it and deliver a car to it. Petitioner's vacation pattern instead reflects a personal interest in other areas. From 1973 through 1977 petitioner averaged four weeks *239 a year vacation, yet during this five year period -- including time spent furnishing the apartment, delivering the car, etc. -- petitioner and his family spent less than four weeks in the unit. Respondent, in contrast, contends petitioner did not purchase the condominium as an activity engaged in for profit. Essentially, respondent's argument is as follows: when Steeg was purchased by Howard Needles, petitioner had a substantial increase in income. In order to avoid taxes and for the personal convenience of an apartment in Florida, petitioner purchased the PGI condominium. Respondent also contends that petitioner did not take the efforts that a "prudent investor" would have taken in choosing a condominium. In essence respondent contends petitioner purchased the condominium for personal use and for tax sheltering. Unfortunately, respondent has few facts to support his theory. Although petitioner did obtain a substantial amount of income from the merger of Steeg into Howard Needles in 1973, we cannot say that he purchased the PGI condominium for personal use and as a tax sheltering and not as an activity engaged in for profit. As noted, personal use has been minimal while rental *240 has increased to continuous occupancy. Although petitioner was unable to rent the unit in 1974, this does not preclude a profit motive. Sec. 1.212-1(b), Income Tax Regs. Finally, we note that respondent's suggested "prudent investor" standard is not the test to be applied in a case such as this. See Benz v. Commissioner,supra.Rather we must decide whether petitioner had a bona fide expectation of making a profit. Based on the record before us we believe petitioner had such a bona fide expectation of making a profit from his Florida condominium. Accordingly, we conclude petitioners are entitled to deduct the entire amount of expenses and depreciation incurred on the condominium. To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. Statutory references are to the Internal Revenue Code of 1954, as amended.↩